# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UPPERLINE HEALTHCARE, PC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:24-cv-00678** |
| | ) | **Judge Aleta A. Trauger** |
| JACLYN "CARLI" HOOVER, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion for Leave to File First Amended Complaint ("Motion to Amend") (Doc. No. 35) filed by plaintiff Upperline Healthcare, PC ("Upperline"). For the reasons set forth herein, the court will deny the motion.[1] The parties' also-pending dispositive motions will be addressed in a separate Memorandum.

## I. PROCEDURAL HISTORY

Plaintiff Upperline initiated this action in the Chancery Court for Davidson County, Tennessee in May 2024, asserting claims against Hoover for breach of certain restrictive covenants set forth in the Employment Agreement between Hoover and Upperline. After Hoover removed the case to this court, the court, following an initial case management conference with the parties, entered an Initial Case Management Order establishing deadlines for amending pleadings, completing discovery, and filing dispositive motions. (Doc. No. 21.) The parties thereafter filed a

---

[1] The court regrets that its scheduling demands did not permit it to address the Motion to Amend sooner. Defense counsel were recently allowed to withdraw (Doc. No. 56), and the defendant is presently *pro se*. However, all briefing on this and the other pending motions was completed while defendant had counsel.

joint motion to extend the fact discovery deadline only and then a joint motion to extend the dispositive motion deadline and to reset the trial. The court granted both of these motions, first extending the fact discovery deadline to August 15, 2025; then extending the dispositive motion deadline to November 14, 2025; and entering a separate Order resetting the trial date from February to May 12, 2026. (Doc. Nos. 27, 31, 32.)[2]

On November 12, 2025, approximately thirteen months after the deadline established by the Initial Case Management Order for amending pleadings and two days before the dispositive motion deadline, Upperline filed its Motion to Amend, along with a supporting Memorandum of Law and the proposed First Amended Complaint, seeking to add one new claim against Hoover and to add two new defendants: her father, Robert Hoover,[3] and a company owned by her husband, T2 Solutions, LLC. (Doc. Nos. 35, 35-1, 36.) The day before Hoover's response deadline, Upperline filed a Notice of Supplementation to Motion for Leave to Amend (Doc. No. 42), alleging new facts concerning an incident that occurred on November 16, 2025, after Upperline filed its Motion to Amend. Hoover filed a Response in opposition to the Motion to Amend (Doc. No. 46), and Upperline filed a Reply (Doc. No. 51).

Aside from other relief sought, as discussed below, Upperline's Motion to Amend requests that, if the court grants its motion, it also revise the current scheduling order or direct the parties to agree to a new scheduling order that allows time for it to take discovery from the two new defendants and to file new dispositive motions following the completion of such discovery. (Doc.

---

[2] In March, the court vacated the May 2026 trial setting due to a conflict posed by a lengthy criminal trial, with the date to be reset following resolution of the now pending motions. (Doc. No. 54.)

[3] Defendant Carli Hoover is referred to herein as "Hoover." To distinguish between them, her father is referred to by his full name as "Robert Hoover."

No. 36 at 9–10.) At the time Upperline filed its motion, it did not believe that the trial date would need to be altered if its requests were granted.

Shortly after Upperline filed its Motion to Amend, it filed its Motion for Partial Summary Judgment (having previously been granted leave to file a motion for partial summary judgment), seeking judgment in its favor on its claims against Hoover, while leaving the computation of damages for trial (and also noting that its Motion to Amend requests a new extended deadline for dispositive motions). Hoover filed her own Motion for Summary Judgment. Each of these motions has been fully briefed, with supporting Memoranda of Law, Statements of Undisputed Facts, the evidentiary material on which each party relies; and Responses, Responses to the Statements of Undisputed Facts, and Reply briefs.

## II.      THE ORIGINAL COMPLAINT

Upperline's original Complaint alleges that defendant Carli Hoover was formerly employed by Upperline as a podiatrist practicing at a clinic owned and operated by Upperline in Orlando, Florida. (Doc. No. 1-1, Compl. ¶ 13.) The terms of Hoover's employment with Upperline were memorialized in an Employment Agreement ("Agreement"). (Doc. No. 37-1.) The Agreement provides that it is to be governed by, and construed in accordance with, Tennessee law and that any disputes arising out of or relating to an alleged breach of the Agreement must be resolved in a federal or state court located in Davidson County, Tennessee, with each party waiving any objection she or it might otherwise have to venue or jurisdiction. (Agreement ¶ 13(f).)

The Agreement provides that both Upperline and Hoover could terminate it at will by giving either ninety days' (Hoover) or thirty days' (Upperline) advance notice. (*Id.* ¶¶ 6(b), (d).) The Agreement also contains restrictive covenants ("Restrictive Covenants") that apply "[d]uring the Term and for a period of two (2) years after termination of this Agreement, by any means and

regardless of the reason therefor." (*Id.* ¶ 12(a).) The Restrictive Covenants, as relevant here, state that Hoover, as "the Podiatrist,"

> shall not, either directly or indirectly, by or for . . . herself or by, for or in conjunction with any other person, company, enterprise or entity (whether as shareholder, member, owner, partner, joint venturer, employee, director, officer, agent, contractor, consultant, advisor, financing source or in any other capacity) do any of the following (nor assist any other person in doing or planning to do any such action):
>
> (i) Compete with Employer;
>
> (ii) . . . [H]ire, employ or engage any person who is or, at any time during the immediately preceding twenty-four (24) month period, was an employee or independent contractor of Employer . . . ;
>
> (iii) Solicit . . . or endeavor to entice away any person who is or, at any time during the immediately preceding twenty-four (24) month period, was a patient of Employer . . . ;
>
> . . . [nor]
>
> (v) Disparage, discredit, demean or belittle Employer . . . .

(*Id.* ¶ 12(a).)

The term "compete" is defined for purposes of this provision as "engage or participate or be involved in any capacity in . . . the practice of podiatric medicine . . . anywhere within a fifteen (15) mile radius from the location at which Podiatrist provides services on behalf of Employer more than thirty (30) days during the six (6) month period preceding any date in question." (*Id.*)

Upperline alleges that Hoover voluntarily resigned on January 1, 2024, with her termination becoming effective on March 1, 2024 (after Upperline exercised its option to accelerate the effective date) and that, after she resigned, she immediately breached the Restrictive Covenants. The original Complaint sets forth breach of contract claims based on Hoover's allegedly violating the Restrictive Covenants by (1) creating a new, multi-office podiatric practice called Central Florida Foot & Ankle Institute ("CFFAI") that provides podiatric services for

patients in Apopka, Florida, at a clinic located 13.55 miles from the Upperline clinic in Orlando, Florida where Hoover practiced when she was employed by Upperline, and at a clinic in Lake Mary, Florida (which is not within fifteen miles of the Upperline Orlando clinic); (2) recruiting or soliciting Upperline's patients; and (3) recruiting and hiring two former Upperline employees (Robert Hoover and Shamaria Resto).

### III. UPPERLINE'S PROPOSED AMENDMENT

Upperline argues in support of its Motion to Amend that, during discovery and particularly upon deposing Hoover on September 30, 2025, the company learned of "additional breaches" by the defendant that were unknown to it and could not reasonably have been discovered before the original Complaint was filed in May 2024. In particular, it asserts that it learned that (1) Hoover partnered with her former classmate, Dr. Sean Griffin, to form CFFAI in December 2023, when she was still employed by Upperline;[4] (2) Griffin formed a "branch" of CFFAI known as Orlando Foot and Ankle Specialists ("OFAS")[5] and opened a clinic less than one mile away from

---

[4] While Upperline makes much of this allegation, the court is aware of nothing in the Restrictive Covenants that would prohibit Hoover from preparing to open another podiatric practice while she was still employed by Upperline, so long as she did not do it on company time and did not actively work at the competing clinic prior to the effective date of her resignation (and assuming that the new clinic was outside the scope of the Restrictive Covenants).

[5] Upperline also emphasizes that Hoover testified that OFAS was created "solely to circumvent" the Restrictive Covenants. (Doc. No. 36 at 2 (citing Doc. No. 37-2, Hoover Dep. 69).) The court notes that Hoover's testimony may also be construed to indicate that she was not involved in OFAS and was not attempting to circumvent but, instead, to abide by the Restrictive Covenants. (*See* Hoover Dep. 68 ("So, he [Griffin] had an opportunity to fill a vacant practice, and he didn't want my restrictions stopping his potential.").) Similarly, the proposed FAC quotes at length Hoover's deposition testimony—as if it were a smoking gun—to the effect that she and her father were both trying to set up their own private practice while trying not to violate the Restrictive Covenants in their Agreements with Upperline. (*See* FAC ¶ 105.) While Hoover agreed that they were trying not to violate their Restrictive Covenants (Hoover Dep. 60–61), Upperline characterizes her testimony as establishing a "concerted effort to get around the obligations they owed the Company" (FAC ¶ 106). Regardless, Hoover's intention is not really the issue. The issue is whether, as a legal matter, she succeeded in complying with the Restrictive Covenants.

Upperline's Orlando clinic where Hoover practiced when she was employed by Upperline; (3) Hoover's brother-in-law (Trenton Lippert) and T2 Solutions, LLC ("T2 Solutions"), an entity owned by Hoover's husband (Kenneth Troy Lippert), were and are "directly involved in the ownership and management" of OFAS; (4) Robert Hoover (Carli Hoover's father) is directly involved in the operation of CFFAI, despite his own contractual obligations to Upperline; (5) Hoover disparaged Upperline through social media posts in October 2024; and (6) Hoover hired an additional former Upperline employee (Kimalo Brown) to work for CFFAI, despite the non-hiring provision of the Agreement. (*See* Doc. No. 36 at 1–3.)

Having learned these new facts, Upperline seeks to amend its pleading to (1) expand the factual allegations to include evidence unearthed during discovery, including evidence regarding the hiring of Kimalo Brown and regarding Hoover's "coordinated efforts with [Robert] Hoover, T2 Solutions, and [Sean Griffin] to wrongfully establish and operate CFFAI and [OFAS]" in violation of the Agreement; (2) add Robert Hoover and T2 Solutions as defendants; (3) assert a breach of contract claim against Robert Hoover, for breach of his own Employment Agreement with Upperline (which is alleged to be virtually identical to Hoover's Agreement); (4) assert a new claim against Hoover for breach of the non-disparagement portion of the Restrictive Covenants in her Agreement through social media posts in October 2024, accusing Upperline of engaging in fraudulent behavior and other misconduct and encouraging people to seek care at CFFAI; and (5) assert a tortious interference claim against Robert Hoover and T2 Solutions based on their roles in facilitating or participating in the formation of CFFAI. (*See id.* at 3–4; *see also* proposed FAC, Doc. No. 35-1.)

In addition, shortly after filing its Motion to Amend, Upperline filed its Notice of Supplementation, which appears to seek to add new facts to supplement those set forth in the

proposed FAC, specifically to allege facts concerning an instance of disparagement by Hoover's husband, who responded to a Facebook post by an Upperline surgeon on November 16, 2025, after Upperline filed its Motion to Amend, by lodging "disparaging and demeaning comments about Upperline." (Doc. No. 42 at 4.) Upperline also reiterates its allegations that Hoover's husband, Troy Lippert, is "significantly involved" in CFFAI, as indicated by other social media posts he has made since Hoover formed CFFAI, and it asserts that Lippert's disparaging posts are made in concert with or on behalf of Hoover. (Id. at 9.)

## IV.    THE PARTIES' ARGUMENTS

Upperline asserts that it should be permitted to amend its pleading under the liberal pleading standard espoused in Rule 15(a) of the Federal Rules of Civil Procedure. It maintains that leave to amend should be granted because it has not engaged in undue delay, is not acting in bad faith, and has not repeatedly failed to cure deficiencies in its pleading and that Hoover will not suffer significant prejudice if leave to amend is granted. Regarding the fact that it waited until November 2025 to move to amend, Upperline contends that most of the new material in the proposed FAC was discovered during Hoover's September 30, 2025 deposition, the transcript for which was not made available to the parties until October 14, 2025. It asserts that amendment to incorporate new facts learned in discovery is appropriate, and that, regardless, delay alone does not justify denial of a motion to amend under Rule 15. It further argues that mere delay in the proceedings and reopening discovery does not constitute prejudice of the kind required to warrant denial of a motion to amend. And, as set forth above, it requests that the court establish new discovery and dispositive motion deadlines if leave to amend is granted.

Hoover opposes Upperline's Motion to Amend, generally asserting that Upperline mischaracterizes much of Hoover's testimony and refuting its new factual allegations. (Doc. No. 46 at 2–6.) Substantively, she argues that Upperline fails even to address the fact that its Motion

to Amend was filed more than a year after the expiration of the court-established deadline for amending pleadings, as a result of which the motion is subject not only to the liberal pleading standard set forth in Rule 15(a), but also to the more rigorous "good cause" standard established by Rule 16(b). (*Id.* at 7–8.) She contends that Upperline was not "diligent" in seeking leave to amend, because Upperline was aware in October 2024, within a week after expiration of the deadline for amending pleadings, of Hoover's alleged disparagement of Upperline and expressed its intent to amend in an email thread dated October 25–28, 2024, but never did so. (*Id.* at 9; *see also* Doc. No. 46-3.) In addition, in a footnote, Hoover asserts that Upperline's claim that it only learned of OFAS during Hoover's deposition is belied by the fact that *Upperline* produced OFAS's Electronic Articles of Incorporation in discovery in February 2025.[6] (*See* Doc. No. 46 at 5 n.4 (citing Doc. No. 46-4).)The Articles of Incorporation attached to Hoover's Response are signed by Troy Lippert, identify "TL Ventures Group, LLC" as the registered agent, and identify both Sean Griffin and TL Solutions as "person(s) authorized to manage" OFAS. (Doc. No. 46-4.) Hoover also points out that, although she was deposed on September 30, 2025, Upperline's Motion to Amend was not filed until forty-three days later, further demonstrating a lack of diligence.

Hoover also asserts that, even if it could establish good cause, Upperline has not carried its burden of showing that Hoover will not be prejudiced by the amendment. Hoover contends that permitting the amendment would prejudice her by causing her to expend additional resources on conducting more discovery and by significantly delaying the ultimate resolution of this dispute, particularly given that the Motion to Amend was filed basically contemporaneously with the summary judgment motions.

---

[6] The exhibit reflects Bates numbering by Upperline ("Upperline__00000001").

Hoover further argues that, even if Upperline satisfied its burden under Rule 16, the court can and should deny the motion under Rule 15, in light of Upperline's undue delay in seeking to amend and because the proposed amendment is futile, insofar as it seeks to add T2 Solutions and Robert Hoover as defendants, because the court lacks personal jurisdiction over them.

Upperline filed a Reply in which it argues that its motion satisfies both Rule 15 and Rule 16. Addressing Hoover's argument that it knew in October 2024 about Hoover's alleged disparagement of the company, Upperline points out that part of the reason that extensions of the discovery and dispositive motion deadlines were required in the first place was because the parties spent a substantial amount of time and effort trying to resolve this dispute without the court's intervention. (Doc. No. 51 at 1.) The email exchange referenced by Hoover shows that, while those efforts were ongoing, Upperline's counsel discovered and then informed Hoover's counsel about Hoover's (and her husband's) disparaging posts in late October 2024, forwarded copies of them, and notified Hoover's counsel that they had been "instructed to file an amended lawsuit" to address them *unless* Hoover took "corrective measures." (*See* Doc. No. 46-3 at 4.) Counsel for Hoover subsequently thanked Upperline's counsel and informed them that the offending posts had been taken down and that "similar behavior/posts will not be forthcoming." (*Id.* at 3; *see also* Doc. No. 51 at 3.) Based on these assurances, Upperline elected not to amend its pleading at that time to assert a disparagement claim, but it asserts now that the assurances were not upheld and that Hoover (and her husband) have continued to disparage Upperline without justification, as demonstrated by its Notice of Supplementation.

Regarding the additional delay and purported lack of diligence, Upperline argues that it sought amendment as soon as practicable while also trying to meet the dispositive motion deadline and, further, that the new disparagement that occurred even after it filed its Motion to Amend

would have required yet another amendment. It also contends that the caselaw on which Hoover's Response relies is distinguishable on the facts. As for prejudice, Upperline asserts that most of the proposed amendments do not involve Hoover and therefore cannot prejudice her, and, insofar as they do concern her, they do not "introduce any fundamentally new facts or otherwise require her to defend against surprising or unrelated allegations," particularly given that the disparagement claim against her is based on the October 2024 posts. (*Id.* at 6.) Otherwise, Upperline contends that the only facts that will arguably require Hoover to expend significant resources to litigate are those raised in Upperline's Notice of Supplementation, alleging conduct discovered after Upperline filed its Motion to Amend and that this is not significant or unfair prejudice.

Regarding Hoover's futility argument, Upperline asserts, first, that the court can exercise jurisdiction over Robert Hoover and T2 Solutions. Regardless, it also contends that Hoover lacks standing to raise a personal jurisdiction defense on behalf of the two proposed new defendants and that, because the defense is waivable, it is more properly raised by the proposed defendants—if they choose to raise it—once they are made parties to the lawsuit.

## V.    LEGAL STANDARDS

Federal Rule of Civil Procedure 15 typically governs motions to amend the pleadings before trial. Fed. R. Civ. P. 15(a). However, where, as here, a motion to amend is filed after the deadline set forth in the court's scheduling order, both Rule 15(a) and Rule 16(b) apply. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *In re: Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020). Under Rule 16(b), the deadline for amendment of pleadings set forth in the court's scheduling order can be extended "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This rule was "designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). Thus, "[o]nce the scheduling order's deadline passes, a

[party] first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.* at 909. The "good cause" requirement in Rule 16 is only satisfied where the movant shows "that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014); *see also Leary*, 349 F.3d 888, 906 (6th Cir. 2003) ("Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment.").

"To show good cause, a moving party can demonstrate that he or she diligently attempted to meet the original deadline." *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (citing *Leary*, 349 F.3d at 906). Courts are to consider five factors in assessing good cause:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests.

*Id.* (quoting *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011)). The central question is "whether a party acted diligently." *Id.*

If the court finds that good cause exists, it then considers whether amendment is appropriate under Rule 15(a)(2). Rule 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Leary*, 349 F.3d at 905 (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile when it would not survive a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

In addition, although neither party cites it, Rule 15(d) is also relevant here. This subdivision of the rule provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). This rule gives district courts "broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15 advisory committee's note to 1963 amendment. In reviewing motions to supplement, courts in this circuit generally consider whether

> (1) the original and supplemental complaints are related; (2) allowing supplementation would serve the interests of judicial economy; (3) there is evidence of delay, bad faith or dilatory motive on the part of the movant, or evidence of repeated failure to cure deficiencies by amendments previously allowed; (4) amendment would impose undue prejudice upon the opposing party; [and] (5) amendment would be futile . . . .

*Student Res. Ctr., LLC v. E. Gateway Cmty. Coll.*, No. 2:22-CV-2653, 2023 WL 6213678, at *7 (S.D. Ohio Sept. 25, 2023) (citing *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-00896, 2015 WL 13034990, at *6 (S.D. Ohio Aug. 7, 2015), *aff'd*, 837 F.3d 612 (6th Cir. 2016)).

"There is a split of authority as to whether a motion to supplement filed after a deadline to amend triggers the Rule 16(b) analysis." *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 639 (D. Nev. 2021) (collecting authority). A majority of courts, however, require a showing of good cause to modify the scheduling order to supplement the pleadings after expiration of the deadline to amend. *Id.* at 640 (adopting the majority view); *see also Avisar v. Chen*, No. 1:23 CV

1980, 2025 WL 2740951, at *4 (N.D. Ohio Sept. 23, 2025) ("follow[ing] the majority position and conclud[ing] that[,] when a party files a motion to supplement the pleadings after the pleading amendment deadline, it must first show good cause for the delayed filing in accordance with Rule 16(b)").

## VI.    DISCUSSION

The plaintiff here faces an uphill battle in showing good cause for failure to seek leave to amend before the amendment deadline expired (or anytime within the intervening thirteen months), particularly given that Upperline's motion does not even address Rule 16. Moreover, even construing the motion as asserting good cause based on Upperline's contention that "the vast majority of the new material that the Company seeks to introduce into this lawsuit was discovered at J. Hoover's September 30, 2025 deposition" (Doc. No. 36 at 6), some of the purportedly new material was clearly available long before Hoover was deposed. For example, the record establishes that (1) Upperline knew about Hoover's alleged disparagement in October 2024 and affirmatively chose then not to seek an amendment based on that event; (2) it has known all along that Robert Hoover is defendant Carli Hoover's father and knew when it filed suit in May 2024 that Robert Hoover was involved in CFFAI (Compl. ¶ 54) and had "renounced [his] obligations to the Company" (*id.* ¶ 55); (3) it also knew when it filed suit that Sean Griffin was Hoover's partner in CFAAI (Compl. Ex. 11, Doc. No. 1-1 at 68), knew about Sean Griffin's creation of OFAS no later than February 2025, and also knew, through the Articles of Incorporation, that Hoover's husband was somehow involved in the creation and management of OFAS (*see* Doc. No. 46-4); and (4) Upperline apparently knew from CFAAI's website, even before deposing Hoover— because it asked her about this during her deposition—that CFAAI's website linked to OFAS's website and that CFAAI claimed to have a "location" in "Downtown Orlando" based on the OFAS clinic in downtown Orlando (Hoover Dep. 116–17).

While it is clear that at least some of these matters were not known and could not have been asserted in a motion to amend filed prior to the amendment deadline of October 18, 2024, Upperline was apparently in possession of sufficient information to have placed it on notice of the need to investigate potential new claims and, at a minimum, it could have sought to modify the scheduling order to extend the deadline for motions to amend and sought leave to amend its pleading well before it did. The plaintiff's diligence is further called into question by the fact that it did not immediately move to amend following the deposition, as Hoover argues. Instead, it waited until four weeks after the deposition transcript was available, six weeks after taking Hoover's deposition, and only two days before the dispositive motion deadline to file its Motion to Amend. The court is not persuaded that the plaintiff needed to wait for the deposition transcript to seek leave to amend. *Accord Roberts v. City of Flint*, No. 06-CV-13789-DT, 2007 WL 2812301, at *3 (E.D. Mich. Sept. 26, 2007) ("The court is unpersuaded by Plaintiff's claim that he needed to wait until he received transcripts of the deposition . . . to determine that he could assert a claim of retaliation against Tipton. While deposition transcripts typically aid a party by providing detail, Plaintiff was well aware of the necessary facts to assert a retaliation claim following the depositions."). Nor did it need to wait an additional four weeks after receiving the transcript.

Moreover, this additional delay was prejudicial because it left the defendant with no choice but to file and brief her Motion for Summary Judgment on the date it was due, two days after the Motion to Amend was filed—briefing that, if the amendment is permitted, the defendant will be required to rework to address the new claims and new allegations, aside from the need to reopen discovery. *Accord McCleese v. Natorp's Inc.*, No. 1:20-cv-118, 2026 WL 874153, at *9 (S.D. Ohio Mar. 31, 2026) ("Allowing amendment after fact discovery may 'create significant prejudice to

the defendants in having to reopen discovery and prepare a defense.'" (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999))).

Finally, while the court agrees with Upperline that it is not appropriate at this juncture to decide whether the court may exercise personal jurisdiction over non-joined defendants, as Hoover posits in support of her futility argument, it is abundantly clear that the proposed new defendants will have a potentially meritorious defense based on lack of personal jurisdiction,[7] which would likely require extensive litigation before the court could even address the merits of the claims against them. The time involved in litigating motions to dismiss for lack of personal jurisdiction would further prejudice Hoover by further delaying the ultimate resolution of the claims against her, potentially by many months. *See Powell v. Honda of Am. Mfg., Inc.*, No. 2:06-CV-979, 2007 WL 4389547, at *1 (S.D. Ohio Dec. 12, 2007) (recognizing that "any delay in the ultimate resolution of an action can work to the prejudice of the parties to the litigation").

The court finds, in sum, that Upperline has not carried its burden of establishing good cause for amending the deadline for motions to amend or showing that amending it now would *not* substantially prejudice the defendant. Finding that the plaintiff has not satisfied the Rule 16(b) standard for amending the scheduling order, the court does not reach the question of whether the proposed pleading amendment should be permitted under Rule 15(a).

---

[7] Robert Hoover's employment agreement with Upperline, attached as an exhibit to the proposed FAC, contains a Florida choice-of-law provision, and it does not incorporate a waiver of any objection to venue or personal jurisdiction in Tennessee for resolving disputes arising under that agreement. (*See* Doc. No. 135-1 at 92.)

## VII. CONCLUSION

For the reasons set forth herein, Upperline's Motion to Amend (Doc. No. 35) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge